UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILY ROSEN,

                              Plaintiff,

              -against-

UBS FINANCIAL SERVICES INC., et al.,

                              Defendants.

Case No. 22-cv-03880 (JLR)

**<u>OPINION AND ORDER</u>**

JENNIFER L. ROCHON, United States District Judge:

        Plaintiff Emily Rosen ("Rosen" or "Plaintiff") commenced this action to recover damages related to employee benefit and deferred compensation plans belonging to decedent Erich Frank ("Frank"), Rosen's domestic partner.  *See* ECF No. 1.  Defendants are UBS Financial Services Inc. ("UBS"), Alight Solutions LLC ("Alight"), Michael O'Connor, individually and as Plan Administrator for the UBS 401(k) Plan ("O'Connor"), and Christopher Ferrara ("Ferrara" and, collectively, "Defendants").  *See id.*[1]  Now before the Court is Defendants' motion for summary judgment on all claims.  ECF No. 39 ("Br.").[2]  Plaintiff opposes that motion.  ECF No. 42 ("Opp.").[3]  For the reasons that follow, Defendants' summary judgment motion is GRANTED.

---

[1] On January 19, 2023, the parties entered a joint stipulation, signed by the Court, dismissing all claims (i) against Defendant Frank Sabia and (ii) seeking recovery based on UBS's equity ownership and deferred contingent capital plans.  *See* ECF No. 37.

[2] Defendants also filed a statement of undisputed facts (ECF No. 39-1 ("SOF")) with a supporting declaration and exhibits (ECF Nos. 39-3 to 39-6); a memorandum of law in reply (ECF No. 43 ("Reply")); and a response to Plaintiff's statement of additional undisputed facts (ECF No. 44 ("RSOF")).

[3] Plaintiff also filed a counterstatement of undisputed facts and additional undisputed facts (ECF No. 41 ("CSOF")) with a supporting affirmation and exhibits (ECF Nos. 40, 40-1 to 40-15).

**BACKGROUND**

The following facts are based on the evidence submitted in connection with Defendants'

summary judgment motion.  Unless otherwise noted, the facts are undisputed and construed in

the light most favorable to Rosen.  *See* S.D.N.Y. Local Rule 56.1(c); *Union Mut. Fire Ins. Co. v.*

*Ace Caribbean Mkt.*, 64 F.4th 441, 443 (2d Cir. 2023); *Giannullo v. City of New York*, 322 F.3d

139, 140 (2d Cir. 2003).[4]

I.     **Factual Background**

In 2014, Rosen and Frank moved in together as domestic partners.  RSOF ¶ 31.  Frank

was a UBS employee.  CSOF ¶ 1.  In connection with his employment, Frank participated in

employment benefit and compensation plans, including a life insurance policy issued by Aetna

Life Insurance Company ("Aetna") with a face value of $150,000 (the "Life Insurance Policy"),

a 401(k) plan administered by UBS with a value of $137,717.68 (the "401(k)"), and a non-

qualified deferred compensation plan through UBS's PartnerPlus Plan (the "PPP").  *Id.* ¶¶ 5, 10.

Alight served as UBS's plan servicer with respect to the employee benefit plans.  *Id.* ¶ 2.

O'Connor and Ferrara were also employed by UBS.  *Id.* ¶¶ 3-4.

---

[4] In response to 18 statements of additional facts in Rosen's CSOF, Defendants assert, in conclusory fashion, that Rosen relied on "improperly authenticated exhibits" and the facts are "controverted, immaterial, and lacking sufficient support."  RSOF at 2 (citing CSOF ¶¶ 33-38, 46-51, 53-59).  However, "[t]he law is clear that 'blanket denials,' wholesale evidentiary objections, and counterstatements unsupported by any citations are insufficient."  *Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79*, 691 F. Supp. 2d 372, 383 (S.D.N.Y. 2009) (quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 312-15 (2d Cir. 2008)); *see Kesner v. Buhl*, 590 F. Supp. 3d 680, 691 (S.D.N.Y. 2022) (disregarding Rule 56.1 responses consisting of blanket denials or wholesale evidentiary objections without evidentiary support); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) ("A district court deciding a summary judgment motion 'has broad discretion in choosing whether to admit evidence.'" (internal citation omitted)).  In any event, the Court need not decide these objections at this time because, even considering the statements to which Defendants object, Defendants are still entitled to summary judgment for the reasons set forth herein.

In 2017, Frank was diagnosed with colon cancer.  RSOF ¶ 32.  According to Rosen, Frank began inquiring about his UBS benefit plans about a year later.  *See* CSOF ¶ 33.  On August 13, 2018, Frank emailed a UBS employee, Lytton-Smith, stating that his attorney and accountant had asked "about [his] deferred, benefits etc for a just in case scenario" and that, although "things [were] in a good place health wise," he "want[ed] to start putting together documents and understanding" his benefits.  *Id.* ¶ 33.  Frank added that he had already "reached out . . . a few times within the last several months and ha[d not] heard anything."  *Id.*  Lytton-Smith responded that same day, telling Frank that he could "access all of his deferred and benefit info right on[]line" and provided a website link.  *Id.* ¶ 34.  In turn, Frank wrote that his "deferred and benefits [were] being asked about in a more morbid fashion" and asked: "1 What happens if I ever have to go on short term disability[?]  2. What happens if I ever have to go out on LTD[?]  3. And finally and the most morbid-how is everything treated if I pass away[?]  That all isn't explained on our [website]."  *Id.* ¶ 35.  Rosen claims that there is no evidence of any response to Frank's August 2018 email until Lytton-Smith forwarded it to Ferrara nearly four months later, on December 19, 2018.  *Id.* ¶ 36.

On December 20, 2018, O'Connor organized a phone call with Frank, Ferrara, and Alight employee Melissa Rice ("Rice") to "make the verbal updates to [Frank's] beneficiaries."  RSOF ¶ 39.  Rosen claims that, during the call, Frank stated that he wanted to make Rosen his beneficiary for his "IRA, Life Insurance, 401(k), all that."  ECF No. 40-2 at 4; *see* Opp. at 4.  O'Connor believed that Frank could confirm and effectuate such a change of beneficiary on his plans verbally, and believed that this phone call was sufficient to do so.  RSOF ¶ 40.  Consistent with this belief, it was not UBS's practice to require a written form to change a beneficiary on

life insurance plans, and Alight followed the direction of UBS in not requiring a written form to change a life insurance beneficiary.  *Id.* ¶¶ 41, 43-45.

Following the December 20 phone call, Alight and UBS employees exchanged a series of emails regarding Frank's beneficiary designations.  *See* CSOF ¶ 48.  Rice emailed O'Connor "to confirm the actions today we have taken on this account" and to "attach[] a mockup of the beneficiary authorization form."  *Id.*; ECF No. 40-4 at 3.  Rice also noted that the beneficiary for Frank's deferred compensation account had been changed, and provided a screenshot indicating that Rosen was now designated as his beneficiary on the Life Insurance Policy.  *See* CSOF ¶¶ 48, 51; ECF No. 40-4 at 3.  O'Connor emailed Ferrara that same day, stating that "Alight has updated the beneficiary information for [Frank] to [Rosen]," although "additional information" was still needed, including the "Executed Beneficiary Certification."  CSOF ¶¶ 55, 57; ECF No. 40-1 at 4; *see also* COSF ¶¶ 6-7.  O'Connor further wrote that "Alight has provided the attached [beneficiary authorization form] as something that counsel could review and sign on behalf of [Frank]."  CSOF ¶¶ 55, 57; ECF No. 40-1 at 4.  In turn, Ferrara forwarded the email from O'Connor to Frank's attorney, Barbara Lawrence ("Lawrence"), attaching the "[b]eneficiary certification" and asking Lawrence if she "can . . . please help with the attached?" ECF No. 40-1 at 4.  Defendants claim that they also sent the beneficiary form to Frank's UBS email account.  *See* CSOF ¶ 9.

On January 2, 2019, O'Connor emailed Rosen that Frank had no beneficiary named for his PPP and suggested "a call with [Frank] to have him verbally provide the beneficiary information."  *Id.* ¶ 14.  Rosen responded that Frank was "unable to speak due to his illness" and asked to be named the beneficiary on his PPP.  *Id.*  In turn, O'Connor emailed Ferrara seeking "a beneficiary designation form that [Frank's] designate c[ould] complete."  *Id.* ¶ 15.  The same

day, he emailed Rosen the following: "Attached is the UBS PartnerPlus Beneficiary Form, which can be completed and sent to NewPort Group via fax or scanned and emailed directly to my attention." *Id.* ¶ 16.

It is undisputed that neither Rosen nor Frank nor Frank's attorney completed and returned the "beneficiary certification" that was sent on December 20, 2018. *See* CSOF ¶ 9. It is also undisputed that they did not complete and return the PPP "beneficiary designation form" that was sent on January 3, 2019. *See id*. ¶¶ 12, 17. Frank died three days later, on January 6, 2019. *Id.* ¶ 18.

## II.    The Probate Proceedings

Following Frank's death, the executor of his estate, Frank Sabia, probated Frank's will with the Surrogate Court of the State of New York, County of New York ("Surrogate Court"). *Id.* ¶ 19. On May 2, 2019, the Surrogate Court issued a Decree Granting Probate with respect to Frank's estate. *Id.* ¶ 20. Frank's PPP benefits are part of the estate. *See id.* ¶¶ 21, 23. Based on his will, Frank's assets in probate are divided among Rosen (31 shares), Frank's mother, Phyllis Frank ("Phyllis") (9 shares), and his two sisters (5 shares each). *Id.* ¶ 22. Rosen has not raised an objection in the probate proceedings, which remain pending. *Id.* ¶¶ 23-24.

## III.    The Interpleader Actions

Rosen and Phyllis asserted competing claims to Frank's employee benefit and compensation proceeds. *See* Br. at 6. On August 5, 2019, Aetna filed an interpleader action in this District related to Frank's Life Insurance Policy. *See* CSOF ¶ 25; *AETNA Life Ins. Co. v. Rosen*, No. 19-cv-06259 (JPO) (S.D.N.Y. Aug. 5, 2019) ("*AETNA* Action"). On November 27, 2019, O'Connor as the 401(k) Plan Administrator commenced a second interpleader action in this District related to Frank's 401(k). *See* CSOF ¶ 27; *O'Connor v. Frank*, No. 19-cv-11001

(JPO) (S.D.N.Y. Nov. 27, 2019) ("*O'Connor* Action").  On November 18, 2020, UBS filed a third interpleader action in this District related to a resource management account that Frank maintained at UBS.  *See* CSOF ¶ 29; *UBS Fin. Servs. Inc. v. Frank*, No. 20-cv-09729 (JPO) (S.D.N.Y. Nov. 11, 2020) ("*UBS* Action").[5]  Rosen asserted a crossclaim in the *UBS* Action seeking a declaratory judgment that she was the sole beneficiary of Frank's resource management account.  *UBS* Action, ECF No. 13.  On February 1, 2021, the court consolidated all three interpleader actions (the "Interpleader Actions").  *See* Br. at 6; *AETNA* Action at ECF No. 35.

On March 22, 2022, the court granted in part and denied in part cross-motions for summary judgment in the Interpleader Actions.  *See* CSOF ¶ 30; *AETNA* Action at ECF No. 75 (the "Interpleader Decision"); *Aetna Life Ins. Co. v. Frank*, 592 F. Supp. 3d 317 (S.D.N.Y. 2022).  With respect to the Life Insurance Policy and 401(k), the court ruled that Frank was required under the terms of his plans to complete a beneficiary designation form to change his beneficiary from Phyllis to Rosen, and that he failed to substantially comply with this requirement.  *See* Interpleader Decision at 10-11.  In assessing Frank's compliance with the plan requirements, the court found that Frank had expressed a desire to change his beneficiary to Rosen on the December 20, 2018 phone call; that following this phone call, UBS emailed a form to Ferrara for Frank's lawyer to sign, and Ferrara then forwarded that form to Frank's lawyer; that UBS mailed another form to Frank to complete to make his new beneficiary designation valid; and that there was no evidence that Frank or his lawyer completed these forms or responded in any way to UBS emailing and mailing the forms to confirm Rosen as his

_____

[5] Although the parties state that the *UBS* Action commenced on December 2, 2019, the docket reflects that the complaint was initially filed in that action on November 27, 2019.  *See UBS* Action, ECF No. 1.

beneficiary. *Id.* As a result, the court declared that Phyllis, as the initial beneficiary designee, was entitled to the Life Insurance Policy and 401(k). *See id.* at 11. On the other hand, the court found that Frank had not designated Phyllis as a beneficiary on his UBS resource management account, and declared that Rosen was entitled to Frank's proceeds as a beneficiary under that plan. *See id.* at 5-7, 11. No party appealed the Interpleader Decision.

IV.     **Procedural History**

One month after the Interpleader Decision, Rosen commenced the instant action in New York Supreme Court, County of New York on April 22, 2022. *See* ECF No. 1-2 ("Compl."). Her Complaint asserts four state common law claims arising from the servicing of Frank's Life Insurance Policy, 401(k), and PPP: (i) negligence against all Defendants; (ii) breach of fiduciary duty against all Defendants; (iii) breach of the duty of good faith and fair dealing against UBS; and (iv) negligence based on *respondeat superior* against UBS. *See id.* ¶¶ 37-53; *see* Opp. at 7-8. Rosen seeks damages at least "equal to the amount under each plan." Opp. at 9. Defendants removed the action to this Court based on both diversity and federal question jurisdiction. *See* ECF No. 1.

Defendants moved for summary judgment on February 9, 2023. *See* Br. Rosen opposed the motion on February 23, 2023, *see* Opp., and Defendants filed their reply on March 2, 2023, *see* Reply.

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, a moving party is entitled to summary judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. ("Rule") 56(a). A fact is "material" only if it "might affect the outcome of the suit under the

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At summary judgment, the court's task is to "discern[] whether there are any genuine issues of material fact to be tried, not to decid[e] them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). The court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Union Mut. Fire Ins. Co.*, 64 F.4th at 445 (quoting *Est. of Gustafson ex rel. Reginella v. Target Corp.*, 819 F.3d 673, 675 (2d Cir. 2016)).

## DISCUSSION

Defendants seek summary judgment on several grounds. Defendants principally contend that Rosen's claims based on the Life Insurance Policy and 401(k) must be dismissed because they are preempted by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA"). *See* Br. at 10-12. Defendants also argue that Rosen's claims based on the PPP fail because Frank never designated a beneficiary for his PPP, and it passed through his estate in probate without objection from Rosen. *See id*. at 18-19. The Court will address these arguments in turn.

### I.     The Life Insurance Policy and 401(k)

Defendants argue that they are entitled to summary judgment with respect to Rosen's claims based on Frank's Life Insurance Policy and 401(k) because the claims "relate to," and are therefore preempted by, ERISA. *See* Br. at 10-12. Rosen does not dispute that the Life Insurance Policy and 401(k) are employee benefit plans governed by ERISA. *See* Opp. at 6; Reply at 2. However, she argues that her claims are not preempted because they arise from legal

duties independent of ERISA.  *See* Opp. at 6-9.  The Court disagrees.  ERISA expressly

preempts Rosen's claims based on the Life Insurance Policy and 401(k) as a matter of law.

"ERISA was enacted 'to make the benefits promised by an employer more secure by

mandating certain oversight systems and other standard procedures.'"  *Rutledge v. Pharm. Care

Mgmt. Ass'n*, 141 S. Ct. 474, 480 (2020) (quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S.

312, 320-21 (2016)).  To that end, "Congress sought 'to ensure that plans and plan sponsors

would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative

and financial burden of complying with conflicting directives' and ensuring that plans do not

have to tailor substantive benefits to the particularities of multiple jurisdictions."  *Id.* (quoting

*Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).  Although the "starting

presumption [is] that Congress does not intend to supplant state law," *Gobeille*, 577 U.S. at 325

(quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645,

654 (1995)), ERISA contains preemption provisions that are "deliberately expansive, and

designed to 'establish pension plan regulation as exclusively a federal concern,'" *Paneccasio v.

Unisource Worldwide, Inc.*, 532 F.3d 101, 113 (2d Cir. 2008) (quoting *Pilot Life Ins. Co. v.

Dedeaux*, 481 U.S. 41, 45-46 (1987)).

There are two related but distinct types of ERISA preemption: complete and express.  *See

Wurtz v. Rawlings Co., LLC*, 761 F.3d 232, 238-41 (2d Cir. 2014).  "Complete preemption" is

implied from Section 502(a) of ERISA and is "a jurisdictional concept" – it provides a federal

court with subject matter jurisdiction by recasting a state law claim as one for federal relief.

*Chau v. Hartford Life Ins. Co.*, 167 F. Supp. 3d 564, 570 (S.D.N.Y. 2016).  By contrast, "express

preemption" derives from Section 514(a) of ERISA.  "Express preemption is one of the 'three

familiar forms' of ordinary defensive preemption (along with conflict and field preemption).'"

*Wurtz*, 761 F.3d at 238 (citing *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 273 (2d Cir. 2005)). It requires the dismissal of state law claims that "relate to" employee benefit plans.  ERISA § 514(a), 29 U.S.C. § 1144(a); *see Chau*, 167 F. Supp. 3d at 570.

Here, the parties' briefs suggest, understandably, some confusion between complete and express preemption.  *See, e.g.*, Br. at 10-12 (seeking dismissal of claims under § 514(a) while referencing complete preemption).  However, there is no question regarding the Court's jurisdiction in this case, which is based on both a federal question and diversity of citizenship. *See* Compl. ¶¶ 26-30.  At issue, then, is whether Rosen's claims, which are all brought under state common law, are expressly preempted by Section 514(a) and subject to dismissal.  *See, e.g.*, *Chau*, 167 F. Supp. 3d at 570 ("Because there is no question regarding the Court's jurisdiction, the Court does not analyze Dr. Chau's state law claims using the doctrine of 'complete preemption.'  Instead, the Court considers whether the claims are expressly preempted by Section 514 of ERISA.").

Under Section 514(a), ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  ERISA § 514(a), 29 U.S.C. § 1144(a).  "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan."  *Paneccasio*, 532 F.3d at 114 (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 96-97 (1983)).  Thus, a state law that "governs a central matter of plan administration or interferes with nationally uniform plan administration . . . is pre-empted."  *Rutledge*, 141 S. Ct. at 480 (quoting *Gobeille*, 577 U.S. at 320).

The express preemption doctrine applies not only to laws specifically designed to affect employee benefit plans, but also to state "common law tort" claims that relate to benefit plans. *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 146 (2d Cir. 1989); *see Pilot Life Ins. Co.*, 481 U.S.

at 45-48.  "As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'"  *Paneccasio*, 532 F.3d at 114 (quoting *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004)).[6]  Applying this standard, the Second Circuit has held that claims for negligence and breach of the duty of good faith and fair dealing, like those asserted here, are expressly preempted by ERISA where they are "premised on" an employee benefit plan, "make[] explicit reference to the [p]lan," and "would require reference to the [p]lan in the calculation of any recovery."  *Id.*

Rosen does not differentiate her claims for negligence, breach of fiduciary duty, and breach of the duty of good faith and fair dealing in her motion papers.  *See* Opp. at 6-9.  Instead, she contends that both she and Frank "had a basic duty of care owed to them to competently provide the service of changing Mr. Frank's beneficiary on the Frank Accounts to Plaintiff, after assurances by Defendants that it would be done."  *Id.* at 7.  She argues that her "claims are based entirely on the independent legal duties of Defendants as fiduciaries and as servicers and

---

[6] In *Paneccasio*, the Second Circuit quoted a portion of one sentence from *Davila*, a complete preemption case, when stating the standard for express preemption.  532 F.3d at 114; *see Davila*, 542 U.S. at 214.  Perhaps on this basis, the parties apply the two-part test for complete preemption from *Davila* in their express preemption arguments.  *See* Br. at 11-12; Opp. at 6. The parties do not cite any binding authority for this approach.  In any event, the outcome of the Court's analysis would be the same even if it were to follow the parties' lead and apply *Davila*'s complete preemption test here.  Rosen does not dispute that she is the type of party that could have brought a claim under Section 502(a)(1)(B), and for the reasons stated herein, her claims could be construed as colorable claims for benefits, and there is no duty implicated that is independent of ERISA.  *See Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328, 333 (2d Cir. 2011) (stating that, under *Davila*, "claims are completely preempted by ERISA if they are brought (i) by 'an individual [who] at some point in time, could have brought his claim under ERISA,'" meaning "the plaintiff is the *type* of party that can bring [such] a claim . . . and the *actual claim* that the plaintiff asserts can be construed as a colorable claim for benefits"; and "(ii) under circumstances in which 'there is no other independent legal duty that is implicated by a defendant's actions'" (quoting *Davila*, 542 U.S. at 210)).

managers of the administrative aspects of the benefits programs, to not act negligently, and to

carry out their duties in good faith." *Id.* at 6. Rosen contends that Defendants violated those

duties by failing to "provide services as required by the Plans." *Id.* at 8. She thus seeks damages

at least "equal to the amount under each plan." *Id.* at 9.

Rosen's state law claims based on the Life Insurance Policy and 401(k) are expressly

preempted by ERISA because they all "relate to" employee benefit plans. ERISA § 514(a), 29

U.S.C. § 1144(a).[7] Her Complaint and motion papers make repeated and express reference to

these plans and their terms. *See* Opp. at 4-9; CSOF ¶¶ 33-36, 39-59; Compl. ¶¶ 10-23, 25-27,

29-33, 36, 38-39, 42-43, 46, 50-52. Each of her claims is premised on Defendants' alleged

denial of rights and violation of their duties under the plans. Rosen herself characterizes her

claims as seeking redress for Defendants' alleged failure to "provide services *as required by the*

*Plans*," and she concedes that her claims are "based entirely" on Defendants' duties "as

fiduciaries and as servicers and managers *of the administrative aspects of the benefits programs*."

*Id.* at 6, 8 (emphasis added). Each of her claims also seeks damages "equal to the amount *under*

*each plan*." *Id.* at 9 (emphasis added). "All of the claims, therefore, represent transparent

attempts to pursue alternate routes to challenge the denial of . . . benefits under the [p]lan[s]

outside of the statutory mechanism established in ERISA." *Chau*, 167 F. Supp. 3d at 572; *see,*

*e.g.*, *Miller v. Int'l Paper Co.*, No. 12-cv-07071 (LAK) (JLC), 2013 WL 3833038, at *11

(S.D.N.Y. July 24, 2013) ("[I]n order to assess Miller's [common law] claims . . . , the Court

would have to review the benefit plan, ascertain the meaning of the plan's various terms, and

then determine whether the plan was accurately represented to Miller. The need for these

---

[7] Defendants do not seek summary judgment with respect to Rosen's PPP claims on express
preemption grounds. *See* Br. at 10-12.

inquiries is reason enough to show that Miller's claims 'relate' to an ERISA plan and are preempted.").

Preemption is especially warranted in this case because Rosen's claims implicate central ERISA entities and functions. *See Rutledge*, 141 S. Ct. at 480. Each of her claims involve the relationship among "core ERISA entities," which include "beneficiaries, participants, administrators, employers, trustees, and other fiduciaries." *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003). Defendants are plan administrators and sponsors or their privy, *see* Opp. at 6; Reply at 4; *see also* CSOF ¶¶ 1-4; Frank was a plan participant, *see* CSOF ¶ 5; and Rosen purports to be Frank's intended beneficiary on the Life Insurance Policy and 401(k), as well as his actual beneficiary with respect to at least one other plan, *see* Opp. at 1, 3 n.1; Compl. ¶¶ 38, 42-43. *See, e.g.*, *Varela v. Barnum Fin. Grp.*, 644 F. App'x 30, 31-32 (2d Cir. 2016) (concluding that ERISA preempted state common law claims where one defendant, "[a]s the insurer and claims administrator," was a "core ERISA entity" (alternations adopted)).

Rosen's claims also involve "core ERISA functions." *Varela*, 644 F. App'x at 31. Each of her claims concerns Frank's right to designate beneficiaries, the process for doing so under the plans, and Defendants' alleged failure to properly adhere to that process. *See* Opp. at 4-5 (arguing that Defendants breached their duties by "fail[ing] to read the plan documents . . . to see what requirements were needed to change the beneficiary," "organiz[ing] a phone call . . . in contradiction of the plans' requirements," and "fail[ing] to start any process to change Mr. Frank's beneficiary on the PPP"); *see also id.* at 6-9. These are the quintessential type of state law claims for improper plan administration that courts routinely find preempted. *See, e.g.*, *Nelson v. Unum Life Ins. Co. of Am.*, 232 F. App'x 23, 24-25 (2d Cir. 2007). Indeed, ERISA preemption is "primarily concerned" with state law claims, like those asserted here, that affect

plan administration and beneficiary designations.  *Rutledge*, 141 S. Ct. at 480 ("ERISA is . . .
primarily concerned with preempting laws that require providers to structure benefit plans in
particular ways, such as . . . by binding plan administrators to specific rules for determining
beneficiary status." (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)); *see O'Shea v. First
Manhattan Co. Thrift Plan & Tr.*, 55 F.3d 109, 114 (2d Cir. 1995) (concluding that state law that
"affects key plan documents such as the [Beneficiary] Designation Form . . . is preempted by
ERISA").  Permitting the state law claims in this case, therefore, would "supplement and even
supplant" ERISA's exclusive statutory mechanisms.  *Nelson*, 232 F. App'x at 25 (affirming
dismissal of state common law negligence and breach of fiduciary duty claims based on
"improper processing" on grounds of preemption).

The Court's conclusion in this case rests on a long line of decisions that have dismissed
state common law claims involving improper plan administration, like those asserted here, as
preempted by Section 514(a).  Over 35 years ago, in *Pilot Life*, the Supreme Court held that the
plaintiff's state common law tort and contract claims should have been dismissed as expressly
preempted by ERISA.  481 U.S. at 47-48.  The Supreme Court reasoned that, because each claim
was "based on alleged improper processing of a claim for benefits under an employee benefit
plan," they "undoubtably meet the criteria for pre-emption under § 514(a)."  *Id.*

Similarly, in *Paneccasio*, the plaintiff brought several state common law claims,
including breach of the covenant of good faith and fair dealing and negligent misrepresentation.
532 F.3d at 114.  The Second Circuit determined that each of the claims there, like Rosen's
claims here, was "premised on" an employee benefit plan and the "resulting denial of benefits
under th[e] [p]lan"; that each claim made "explicit reference" to the plan; and that each claim

"would require reference to the [p]lan in the calculation of any recovery." *Id.* As a result, the Second Circuit affirmed the dismissal of the claims as preempted by ERISA. *Id.*

The Second Circuit's decision in *Varela* is especially instructive. 644 F. App'x 30. The plaintiff there, like Rosen here, brought state common law negligence and breach of fiduciary duty claims. *Id.* at 31. Like Rosen, the plaintiff argued that her deceased partner had been given "oral misrepresentations" and improper "advice" by his employer, co-worker, and plan administrator about the requirements under his plan. *Id.* at 31. In rejecting the plaintiff's arguments that her claims were not preempted, the Second Circuit reasoned that at least one defendant, as an "insurer and claims administrator of the Plan," was a "core ERISA entity," and that claims pertaining to the plaintiff's husband's "right under the Plan to convert his policy, and the process for doing so," involved "central ERISA functions." *Id.* at 31-32 (alternations adopted). The Second Circuit therefore affirmed the dismissal of her claims as expressly preempted by Section 514(a) of ERISA. *Id.* The Court reaches the same result here, where Rosen's claims arise from oral representations made to her and her domestic partner by his employer and plan administrator about requirements under his plan.

The Court is also guided by *Richard Manufacturing Co. v. Richard*, 513 F. Supp. 3d 261 (D. Conn. 2021). There, the plaintiff's husband maintained employee benefit plans through his employer. *Id.* at 266. Following his death, the employer commenced an interpleader action to resolve competing claims by the plaintiff and her son to the decedent's supplemental retirement plan. *Id.* Like the Interpleader Decision here, the court there determined that the plaintiff "lack[ed] the designation in writing necessary to be the beneficiary of the [plan] funds." *Id.* at 281. As Rosen did here, the plaintiff there asserted state common law claims against the employer to recover in damages the benefits she would have been entitled as a beneficiary. *Id.*

at 286.  The plaintiff argued, as Rosen does, that she was "an intended third-party beneficiary" of the plan and relied on the employer's "represent[ion] that it did not have a copy of a beneficiary designation for the [plan]," where the plan required a written beneficiary designation.  *Id.* at 288-89.  The court held that her "claims all focus squarely on the [plan]," and "would require a finding that the [plan] had been improperly distributed."  *Id.* at 289.  The court therefore dismissed her claims because, like here, they all "relate[d] to" an employee benefit plan under ERISA.  *Id.*

*Paneccasio*, *Varela*, and *Richard* are not unique.  Courts in this Circuit regularly find that Section 514(a) of ERISA preempts state law claims for negligence, breach of fiduciary duty, and breach of the duty of good faith and fair dealing that implicate the improper administration of an employee benefit plan.  *See Tulczynska v. Queens Hosp. Ctr.*, No. 17-cv-01669 (DAB), 2018 WL 1664506, at *4-5 (S.D.N.Y. Mar. 14, 2018) ("Courts in this Circuit have . . . held that claims under New York State law for breach of contract, breach of common law fiduciary duty, fraud, negligence, and misrepresentation are preempted by ERISA."); *see, e.g.*, *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438, 446 (S.D.N.Y. 2002) (dismissing breach of fiduciary duty claim based on the defendant "representing to [the plaintiff's deceased partner] that [the plaintiff] was entitled to benefits under an ERISA plan when, in fact, she received no such benefits"); *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Ben. Fund*, No. 22-cv-06087 (PKC), 2023 WL 5956142, at *19 (S.D.N.Y. Sept. 13, 2023) (dismissing state common law claim based on the plaintiff's purported status as "the intended beneficiary of the benefits within the [p]lan" because it "clearly 'relates to' the Plan, as it is premised on the existence of the Plan"); *Chau*, 167 F. Supp. 3d at 572 ("[The plaintiff's] claim that . . . defendants acted negligently in their evaluation of her claims under the Plan, . . . 'relates to' the Plan, and, is therefore preempted by ERISA.");

*Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 409 (S.D.N.Y. 2009) ("[P]laintiffs' fraud and fiduciary duty claims directly relate to plaintiffs' employee benefit plans and allege misconduct by defendants in the administration of those plans, claims that fall directly under ERISA's express preemption clause."); *Trundle & Co. Pension Plan v. Emanuel*, No. 18-cv-07290 (ER), 2019 WL 4735380, at *6 (S.D.N.Y. Sept. 27, 2019) (dismissing claims for breach of fiduciary duty and the duty of good faith and fair dealing because the underlying duties depended on the existence of an ERISA plan); *Michael E. Jones M.D., P.C. v. UnitedHealth Grp., Inc.*, No. 19-cv-07972 (VEC), 2020 WL 4895675, at *5 (S.D.N.Y. Aug. 19, 2020) (dismissing breach of the duty of good faith and fair dealing claims because none "would exist but for the existence of . . . obligations under the ERISA plans, and liability and damages for each claim cannot be ascertained without referring to the plans' coverage and payment terms").

The Court is not persuaded by Rosen's contrary arguments. Rosen first argues that her claims arise from legal duties independent from, and thus not preempted by, ERISA. *See* Opp. at 6-9. However, she does not identify or explain any duty that is independent from the Life Insurance Policy and 401(k). *See Tulczynska*, 2018 WL 1664506, at *4-5 (rejecting argument that the plaintiff was owed an independent duty because she did "not cite any state law in support of her claims nor offer any other explanation for why [the defendants] owe her a duty" separate from her plan). To the extent that Rosen argues that Defendants' representations over the phone gave rise to such a duty, their assurances were made in the process of administering Frank's plans and are "inextricably intertwined" with his plans. *Montefiore Med. Ctr.*, 642 F.3d at 332 (concluding in complete preemption context that "phone conversations" about plan administration "did not create a sufficiently *independent* duty"); *see Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 7 (2d Cir. 1992) (concluding that the defendant's "oral assurance" regarding the plan

did not give rise to a duty independent of ERISA).  Moreover, Rosen admits that her claims are

"based entirely" on Defendants' duties "as fiduciaries and as servicers and managers of the

administrative aspects of the benefit programs," that is, that their duties were *not* completely

independent from those plans.  Opp. at 6.

Rosen's reliance on *Gerosa* is misplaced.  *See* Opp. at 6.  In that case, the plaintiffs

brought a professional malpractice claim against an accountant acting as a plan actuary.  329

F.3d at 324.  Noting that "[r]egulating the professions, particularly under a rubric of professional

malpractice, is a traditional state function," the Second Circuit stated that "garden-variety state-

law malpractice or negligence claims against non-fiduciary plan advisors, such as accountants,

attorneys, and consultants, are not preempted" by ERISA, whereas "state laws that would tend to

control or supersede central ERISA functions – such as state laws affecting the determination of

eligibility for benefits, amounts of benefits, or means of securing unpaid benefits – have typically

been found to be preempted." *Id.* at 328.  Here, Rosen's claims against core ERISA entities

concerning central ERISA functions fall squarely within the latter category.  *See, e.g.*, *Nelson*,

232 F. App'x. at 23-24 (affirming dismissal of state law claims because they concerned

"improper processing" by "an ERISA fiduciary" falling within the latter *Gerosa* category);

*Varela*, 644 F. App'x at 31-32 (affirming dismissal of state law claims under *Gerosa* because

they involved "central ERISA functions" by a plan administrator); *Tulczynska*, 2018 WL

1664506, at *4-5 (dismissing state law claims under *Gerosa* because the plaintiff did not identify

any separate legal duty and her claims concerned "core ERISA entities").

Rosen's argument that her claims are not preempted because she seeks "damages" rather

than "policy benefits" is similarly unavailing.  Opp. at 9.  It is well established that

"distinguishing between pre-empted and non-pre-empted claims based on the particular label

affixed to them would 'elevate form over substance and allow parties to evade' the pre-emptive

scope of ERISA simply 'by relabeling their . . . claims.'" *Davila*, 542 U.S. at 214 (quoting *Allis-

Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).  Although Rosen argues that her claims are

independent of the plans, the damages she seeks are "equal to the amount [of benefits] under

each plan" that she was allegedly denied.  Opp. at 9.  As a result, "Plaintiff's claims are merely a

repackaged attempt to recover the benefits she alleges she would have been entitled to if

[Defendants] had [designated her as beneficiary] according to the terms of the Plan."  *Varela v.

Barnum Fin. Grp.*, No. 13-cv-03332 (ALC), 2015 WL 12964717, at *4 (S.D.N.Y. Aug. 11,

2015), *aff'd*, 644 F. App'x 30 (2d Cir. 2016).

The Court understands that Rosen may be frustrated that she cannot proceed with her

state common law claims in this action.  *See* Opp. at 7.  However, "Congress sought 'to ensure

that plans and plan sponsors would be subject to a uniform body of benefits law,'" and

preemption "'minimiz[es] the administrative and financial burden of complying with conflicting

directives' and ensuring that plans do not have to tailor substantive benefits to the particularities

of multiple jurisdictions."  *Rutledge*, 141 S. Ct. at 480 (quoting *Ingersoll-Rand Co.*, 498 U.S.

at 142).  "Employers might well cut back on benefit plans if faced with the expense and

difficulty of satisfying varied and conflicting requirements of state laws."  *Paneccasio*, 532 F.3d

at 113.  To permit her claims to proceed under these circumstances would undermine "[t]he

policy choices reflected in Congress's inclusion of certain remedies and exclusion of others" in

the statutory scheme.  *Kishter*, 186 F. Supp. 2d at 447 (quoting *Smith*, 959 F.2d at 11).

Because Rosen's state claims based on the Life Insurance Policy and 401(k) seek "to

rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt

to remedy any violation of a legal duty independent of ERISA," they are expressly preempted by

ERISA and must be dismissed. *Paneccasio*, 532 F.3d at 114 (quoting *Davila*, 542 U.S. at 214).

Accordingly, Defendants' motion for summary judgment as to Rosen's claims based on the Life

Insurance Policy and 401(k) is granted.

## II.    The UBS PartnerPlus Plan

Defendants contend that they are entitled to summary judgment on Rosen's claims that

are based on the PPP for several reasons. *See* Br. at 18-19; Reply at 10. Defendants argue that

(i) Frank never designated a beneficiary for his PPP, (ii) the PPP passed through Frank's estate

(including, in part, to Rosen) without objection from Rosen, (iii) adjudicating the PPP would

improperly interfere with Frank's pending probate proceedings, and (iv) Rosen lacks standing to

assert claims based on the PPP. *See* Br. at 18-19; Reply at 10. Rosen does not address these

arguments in her opposition papers. *See generally* Opp.[8] Therefore, Rosen has waived any

arguments that her claims based on the PPP withstand Defendants' motion. *See, e.g.*, *Palmieri v.*

*Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (noting that a party who does not "raise [an] argument in

his opposition to summary judgment" waives that argument); *Ohr Somayach/Joseph Tanenbaum*

*Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not

raised in a party's brief are deemed waived.").

Even if the Court were to consider the PPP claims, the Court agrees with Defendants that

Rosen lacks standing to assert those claims here. *See* Br. at 19; Reply at 10. It is undisputed that

Frank did not designate a beneficiary for his PPP. CSOF ¶ 12. Although Rosen may have an

---

[8] In two paragraphs at the end of her opposition brief, and without citation to case authority,
Rosen argues that her PPP claims are "not time-barred." Opp. at 16. However, Defendants do
not raise any argument in their motion that the claims are time barred. *See generally* Br.; Reply.
Rosen elsewhere argues that she has standing to bring her claims, *see* Opp. at 14-15, but that
argument references only "life insurance" proceeds and does not address her claims based on the
PPP or otherwise respond to Defendants' arguments and authority regarding her PPP claims.

interest in Frank's estate as a beneficiary in his will, "in New York, heirs suing for damages resulting from a diminished inheritance generally have no standing to sue because 'legatees and beneficiaries thereof have no independent cause of action either in their own right or in the right of the estate to recover estate property.'" *Frank*, 592 F. Supp. 3d at 321 (quoting *Witzenburg v. Jurgens*, No. 05-cv-04827 (SJF), 2007 WL 9710763, at *9 (E.D.N.Y. Mar. 1, 2007)).

Defendants' motion for summary judgment as to Rosen's claims based on the PPP is therefore granted.[9]

## CONCLUSION

For the foregoing reasons, Defendants' motion is GRANTED, and the Complaint is DISMISSED.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 39 and CLOSE the case.

Dated: September 29, 2023
New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge

---

[9] Because Defendants are entitled to summary judgment on all claims for the reasons stated herein, the Court need not reach their additional arguments for dismissal.